Argued March 12, decided April 7, 1914.

## STATE *v.* DAVIS.*

(140 Pac. 448.)

**Criminal Law—Evidence—Res Gestae.**

1. In a prosecution for murder, an exclamation of decedent's
daughter, during a scuffle between defendant and decedent's husband
and another at the time of the killing, that defendant had killed her
mother, was admissible as part of the *res gestae.*

[As to what is included within the *res gestae*, see notes in 95
Am. Dec. 51; 16 Am. St. Rep. 407.]

**Witnesses—Impeachment—Former Inconsistent Testimony.**

2. Though, under Section 864, L. O. L., providing that a witness
may be impeached by evidence that he has made, at other times,

---

*On the question of self-defense set up by accused, who began
the conflict, see note in 45 L. R. A. 687. And as to withdrawal from
participation in homicide which will relieve from criminality, see
note in 4 L. R. A. (N. S.) 576. And for "retreat to the wall" in homi-
cide, see note in 2 L. R. A. (N. S.) 49.          REPORTER.

statements inconsistent with his present testimony, a coroner or stenographer. may be called to testify whether a witness made statements at an inquest inconsistent with his present testimony, the exclusion of the coroner's record, consisting of a synopsis of the evidence, or of the stenographer's transcript of it, is not error.

[As to impeaching of witness by prior contradictory statements, see note in 73 Am. Dec. 762.]

**Homicide—Intent—Use of Deadly Weapon—Presumption—Rules of Evidence.**

3.   Neither Section 798, subdivision 2, L. O. L., relating to conclusive presumptions, providing that a malicious and guilty intent is presumed from the deliberate commission of an unlawful act for the purpose of injuring another, Section 799, subdivision 3, providing that a person is presumed to intend the ordinary consequences. of his voluntary acts, nor Section 1894, providing that if any person in the commission or attempt to commit any felony kill another, such person shall be deemed guilty of murder in the second degree, authorized an instruction in a prosecution for murder committed while the defendant was engaged in a fight with others than the decedent, that it is presumed that a person using a deadly weapon intended the consequences which happened from it.

[As to presumption of intent to kill arising from use of deadly weapon in manner not ordinarily employed, see note in Ann. Cas. 1912A, 107.]

**Homicide—Self-defense—Aggression of Defendant.**

4.   Where defendant is the aggressor, he cannot rely upon self-defense unless he has first withdrawn from the combat in such a manner as to show his adversary his intention, in good faith, to desist.

[As to self-defense by one who·has made an attack, or voluntarily entered into, upon a rencounter, see note in 109 Am. St. Rep. 804.]

**Homicide—Instructions—Burden of Proof.**

5.   Under Sections 1500, 1505, L. O. L., giving the defendant the right, under the plea of not guilty, to make every defense he has, ·including self-defense and insanity, except former conviction or acquittal, which must be specially pleaded, and Section 868, subdivision 5, placing the burden of proof always upon the state except on the defense of insanity, as to which Section 1527 casts the burden on the defendant, it was error to instruct the jury that if they found, beyond a reasonable doubt, that defendant was justified in shooting, they should find him not guilty, and if they did not find beyond a reasonable doubt that he was justified they should find him guilty of one of the crimes specified in the instructions.

**Criminal Law—Appeal—Review—Affirmance—Harmless Error.**

6.   Article VII, Section 3, of the Constitution providing that, if the Supreme Court shall be of the opinion that the judgment appealed from was such as should have been rendered, the judgment shall be affirmed notwithstanding any error committed during the trial, does not authorize affirmance of a conviction where the case was submitted on a wrong theory of the law.

·From Polk: WEBSTER HOLMES, Judge.

Department 2.   Statement by MR. JUSTICE EAKIN.

The defendant, Louis Davis, was indicted for murder
in the first degree, to which he entered a plea of not
guilty.   Trial was had resulting in a verdict of murder
in the second degree.   Defendant and his wife were
separated, and the wife was at the home of her parents,
Mrs. Eliza J. Stewart and G. M. Stewart, near Ball-
ston, in Polk County, Oregon.   On the morning of
June 29, 1913, the defendant, at Eola, put an automatic
gun into his pocket, and went from there to Dallas.
Arriving at Ballston about 5 o'clock, he spent the night
in a grove about 400 yards from the Stewart home.
Near 6 o'clock on the morning of the 30th he went
to the Stewart home, and met his wife and her mother
in the dooryard, and on going into the house by the
kitchen door defendant was ordered away by G. M.
Stewart, when Stewart says defendant drew a gun
out of his pocket.   Stewart then withdrew and went
to a neighbor's (Agee's), and asked him to go over
to his house.   They returned to the house and went
in through the front door, passing through the house
to the kitchen, where defendant and his wife and her
mother were.   As told by Agee, Stewart ordered de-
fendant to leave the house, and Davis moved forward
a couple of steps and commenced shooting; the first
shot striking Agee, as did three other shots fired in
close succession.   During this time, Agee and Stew-
art took hold of Davis for the purpose of disarming
him, and Mrs. Stewart was killed by a bullet.   Stew-
art had a gun in his pocket, and during the struggle
dropped it on the floor.   The guns were both of the
same caliber.   Stewart says his gun was not fired at
all.   There was some controversy at the trial whether
Mrs. Stewart was killed by a bullet from defendant's
gun or from that of Stewart, such question not being
involved, however, on this appeal.   In Salem, on June

28th, defendant had made threats to Marshall Stewart, a brother of Mrs. Davis, that he (Stewart) would bury his mother over this (the trouble growing out of the separation of defendant and his wife), and that he would put a bullet through himself. He made other threats at the same time, and also to other people at a different time that he would kill Mrs. Stewart.

With other instructions, the court gave the following to which the defendant took exceptions, relying upon it as reversible error:

"Now the voluntary and intentional use of a deadly weapon of one capable of taking life leaves the presumption of malice, and there has been some testimony introduced here of threats made by this defendant. You are the sole judges of whether you think that is true or not, beyond a reasonable doubt, and the threats, if they are proven in a case of this kind, are permitted for the purpose of showing premeditation, and a deliberate design, and also of malice, so you must consider whether or not you think the defendant has made threats upon the life of the deceased. * * And the deliberate use of a deadly weapon. It is presumed that the person using it intended the consequences which happened from the same, and you have a right to consider that in connection with other evidence, and when it comes down to a case of self-defense, which the defendant has undertaken to avail himself of here, it isn't necessary that there be actual or real danger emanating from some person toward the accused; but, if it has the appearance of being real or genuine, and of such a nature as to cause him to believe he will suffer great bodily harm, then the person under those circumstances is justified in taking human life on his own behalf. But that must be of such an appearance as would satisfy any reasonable man, under the circumstances, that he was in real or apparent danger of great bodily harm. And also the defendant could not avail himself of the defense of self-defense if he had provoked the quarrel; the rule being that if a person starts a row, a fight, himself, and then the other

party resists, even with a weapon, he is not in a position to take that individual's life, and invoke the rule of self-defense. The only theory when self-defense is allowed is when a man, when he is not the aggressor, protects his own life from either real or apparent danger to himself from great bodily harm. You will consider the evidence carefully in that regard, as you should consider all the evidence in this case. If you find from all the evidence beyond a reasonable doubt, under the rules given you that this defendant was justified under all the circumstances, in shooting with a pistol to protect himself from great bodily harm, then you should find him not guilty, but, if you do not, beyond a reasonable doubt, then you should find him guilty of some one of those crimes about which I have heretofore charged you.''

The trial resulted in a verdict of murder in the second degree, and judgment was rendered against the defendant, from which he appeals.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Walter L. Tooze, Jr.*

For the State there was a brief with oral arguments by *Mr. Donald H. Upjohn,* District Attorney, and *Mr. Joseph E. Sibley.*

Mr. JUSTICE EAKIN delivered the opinion of the court.

1. It is first objected that it was error on the part of the court to admit in evidence an exclamation by defendant's wife during the scuffle at the time Mrs. Stewart was shot and fell, namely, ''He's killed Ma!'' This was evidently a spontaneous exclamation made in the excitement of the occasion by Mrs. Davis, and was a part of the transaction—an expression incident to and occasioned by what was taking place. It was

indicative of both the fact that Mrs. Stewart had been killed and of the particular instant of her fall, and was, in fact, contemporaneous with the transaction and a part of the *res gestae;* and its admission in evidence was not error.

2. It is assigned as error that the court refused to permit defendant to introduce in evidence the record of the coroner's inquest held over the body of the decedent. The county clerk was called as a witness and asked to produce the report of the coroner of the proceedings had at the inquest. This was offered in evidence by the defendant that the testimony of Mr. Stewart might be read to the jury for the purpose of impeaching him. The coroner is required by statute to reduce the evidence taken at the inquest to writing, and, if the coroner's jury find that a crime was committed, the coroner must forthwith deliver the testimony and the verdict to a magistrate, who must issue a warrant for the arrest of a person charged with the crime; but the statute does not make the report of the evidence by the coroner evidence against the defendant or cause it to be used other than as a basis upon which the warrant may be issued. However, that did not prevent its being used as evidence for impeachment purposes, if it was written by the witness or signed by him and properly identified. Usually the coroner preserves only a synopsis of it, or, if taken by a stenographer, his transcript of it is not sufficient to impeach the witness who testified, as he is not bound by the minutes of the testimony or the transcript thereof as being the exact statements made by him, although the coroner or the stenographer may be called to testify whether the witness made some statements inconsistent with his present testimony under the provisions of Section 864, L. O. L. There was no error in excluding the coroner's record.

3. Error is alleged in the giving of the first part of the second instruction quoted, namely:

"It is presumed that the person using it [a deadly weapon] intended the consequences which happened from the same."

This does not come within any of the statutory presumptions. Section 799, subdivision 3, L. O. L., on the subject of a disputable presumption, provides that a person is presumed to intend the ordinary consequences of his voluntary acts; and Section 798, subdivision 2, L. O. L., as to a conclusive presumption, provides that a malicious and guilty intent is presumed from the deliberate commission of an unlawful act for the purpose of injuring another; but neither of these is followed by the court. The instruction was given as a conclusive presumption, at least it would be so understood by the jury. It would not be true in every case that such a presumption would arise as to the ordinary consequence of an act; but the killing of Mrs. Stewart, if the shot having that result was intended for and directed at Agee, would not be the ordinary consequence of the act. The first presumption of law in such a case is that the defendant is innocent until the contrary is made to appear; but when it is shown that he killed deceased by the deliberate use of a deadly weapon, and the killing is otherwise unexplained, the statutory presumption, that an intent to murder is conclusively presumed from the deliberate use of a deadly weapon causing death within a year, would prevail. When the attendant circumstances of the killing are shown in evidence, the presumption must be taken in the light of the facts proved; but a presumption cannot be raised contrary to the facts established; and, where there is a conflict in the evidence, it is for the jury to determine what are the facts. If Mrs. Stewart was killed by accident,

then the presumption given by the court would not follow; but even were she killed by defendant, though unintentionally, the malice against Agee or Stewart, if defendant were the aggressor, is by the statute carried over to Mrs. Stewart. Section 1894, L. O. L., provides: "If any person * * in the commission or attempt to commit any felony, other than * * kill another, such person shall be deemed guilty of murder in the second degree." But in such case the killing of Mrs. Stewart would not be the ordinary consequences of the deliberate use of the weapon, and the giving of the instruction was error.

4, 5. Again, the defendant assigns as error the portion of that instruction in which the court tells the jury that the defendant could not rely upon self-defense if he provoked the quarrel. The rule is that where the defendant is the aggressor he cannot rely upon self-defense, except he has first withdrawn from the combat in such a manner as to show his adversary his intention, in good faith, to desist: 21 Cyc. 805. But that question did not arise in this case. Defendant does not pretend that he at any time desired to withdraw from the combat. He was acting either in self-defense from the first or was the aggressor throughout; but the court also told the jury that if they found from the evidence, beyond a reasonable doubt, that defendant was justified in shooting, they should find defendant not guilty, and, if they did not find beyond a reasonable doubt that he was justified in shooting, they should find him guilty of some one of the crimes specified in the instructions given. This instruction shifted the burden of the proof and cast it upon the defendant. A defendant is entitled to make every defense he has upon a plea of not guilty, except the defense of former conviction or acquittal, which must be specially pleaded, as provided by Sections

1500, 1505, L. O. L., in which self-defense, and even a defense of insanity, are included. The burden of proof is always upon the state (Section 868, subdivision 5, L. O. L.), except on the defense of insanity, where the burden is cast upon the defendant: Section 1527, L. O. L. There are other assignments of error, but as the same questions may not arise upon the new trial, we deem it unnecessary to discuss them.

6. The state contends that by the provisions of Article VII, Section 3, of the Constitution, the court should sustain the judgment notwithstanding the errors; but the case was submitted to the jury upon a wrong theory of the law, both as to the application of the presumption mentioned and as to the burden of proof on the question of self-defense. Therefore we are not permitted to theorize as to what the verdict of the jury should have been if the issues had been properly presented.

For the errors mentioned, the judgment must be reversed and the case remanded for a new trial.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.