Argued and submitted May 4, 2022; conviction on Count 2 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine, convictions on Counts 3 and 5 reversed and remanded, remanded for resentencing, otherwise affirmed June 22, petition for review denied November 2, 2023 (371 Or 511)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# MICHAEL WAYNE WESLEY, JR.,
*Defendant-Appellant.*

## Lane County Circuit Court
## 19CR58352; A173334

533 P3d 786

Defendant appeals from a judgment of conviction for unlawful delivery of methamphetamine (Count 2), ORS 475.890; unlawful possession of heroin (Count 3), ORS 475.854; felon in possession of a firearm (Count 5), ORS 166.270; attempt to elude (Count 6), ORS 811.540; reckless driving (Count 8), ORS 811.140; and recklessly endangering another person (Count 9), ORS 163.195. On appeal, defendant challenges the trial court's nonunanimous jury instruction and acceptance of nonunanimous verdicts and findings as well as its exclusion of two defense witnesses as a remedy for what the court concluded were discovery violations by the defense in delaying the disclosure of those witnesses until after the state rested its case. In supplemental briefing, defendant also challenges his conviction for unlawful delivery of methamphetamine (Count 2) as plain error under our recent decision in *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022). *Held*: *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), required reversal of Counts 3 and 5 because the jury's verdicts on those counts were not unanimous. Given *Hubbell*, the state's evidence was insufficient to prove the transfer element of Count 2, the offense of delivery of methamphetamine. However, the Court of Appeals remanded with instructions to enter a judgment of conviction for attempted delivery of methamphetamine, because the evidence was legally sufficient to support the conclusion that defendant took a substantial step toward the commission of the crime of delivery. As to the discovery violation issues, the trial court did not err or abuse its discretion in excluding witness Martin's testimony and, although the court did err in excluding witness Dupree's testimony, that error was harmless, given the evidence showing that defendant was in either joint or individual possession of a substantial quantity of methamphetamine when he attempted to elude police.

Conviction on Count 2 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine; convictions on Counts 3 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

R. Curtis Conover, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Pagán, Judge, and Armstrong, Senior Judge.

SHORR, P. J.

Conviction on Count 2 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine; convictions on Counts 3 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

Pagán, J., concurring in part and dissenting in part.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for unlawful delivery of methamphetamine (Count 2), ORS 475.890; unlawful possession of heroin (Count 3), ORS 475.854; felon in possession of a firearm (Count 5), ORS 166.270; one count of attempt to elude (Count 6), ORS 811.540; reckless driving (Count 8), ORS 811.140; and recklessly endangering another person (Count 9), ORS 163.195.[1] On appeal, defendant challenges the trial court's nonunanimous jury instruction and acceptance of nonunanimous verdicts and findings as well as its exclusion of two defense witnesses as a remedy for what the court concluded were discovery violations by the defense in delaying the disclosure of those witnesses until after the state rested its case. In supplemental briefing, defendant also challenges his conviction for unlawful delivery of methamphetamine (Count 2) as plain error under our recent decision in *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022). As explained below, we reverse and remand Counts 3 and 5 because the jury's verdicts were not unanimous. We also reverse and remand Count 2 for entry of a judgment of conviction for attempted delivery of methamphetamine in light of *Hubbell*.[2] As to the discovery violation issues, we conclude that the trial court did not err or abuse its discretion in excluding witness Martin's testimony and, although the court did err in excluding witness Dupree's testimony, that error was harmless.

## I. BACKGROUND FACTS[3]

In the early morning of September 1, 2019, defendant was driving a Chevrolet truck northbound on Interstate 5 in Lane County. An Oregon State Police (OSP)

---

[1] The jury found defendant guilty of unlawful possession of methamphetamine (Count 4), ORS 475.894, and a second count of attempt to elude (Count 7), ORS 811.540. The trial court merged the verdict on Count 7 into the verdict on Count 6 and merged the verdict on Count 4 into the verdict on Count 2. The jury acquitted defendant of unlawful delivery of heroin (Count 1), ORS 475.850.

[2] Our reversal of Count 2 does not disturb the guilty verdict on Count 4. *See also* 326 Or App at 505 n 5 (discussing effect of nonunanimous verdict on subcategory factor alleged in Count 4).

[3] We supplement the facts as necessary in our analysis of defendant's specific assignments of error.

officer attempted to stop defendant for traffic violations after seeing him swerve back and forth in the lanes and fluctuate in speed, both below and above the posted speed limit. Defendant, however, sped away, exiting the interstate onto Beltline Road in Eugene. At several points during the pursuit, the officer noted that the truck's speed exceeded 100 miles per hour. The OSP officer stopped the pursuit, but later rejoined it after a Lane County Sheriff's Office deputy spotted the truck.

After the deputy pursued the truck through Eugene at speeds up to 90 miles per hour, the truck slowed as if it was "experiencing some sort of mechanical failure" and eventually crashed into a tree. Both the driver's door and passenger door opened simultaneously "like they were both getting ready to bail from the truck." Both defendant, who fell out of the driver's side, and a female passenger, Klein, were arrested.

The OSP officer arrived less than 30 seconds after the crash and saw, through the open driver's door, a handgun secured to the top of the steering column. A small black nylon bag with part of a black and white bandana sticking out from it was also attached to the steering column. Inside the bandana was a methamphetamine rock "about the size of [the officer's] fist." In the same area was another black and white bandana, also containing a large quantity of methamphetamine. A clear glass pipe containing white residue was found between defendant and the car. On the floorboard of the driver's side of the truck, the officer found a zippered pouch, which contained more methamphetamine; another black zipper pouch similar in size to a compact disc case that contained a "smaller amount of methamphetamine with several small plastic baggies, a small bindle of a dark brown tar-like substance consistent with heroin," a digital scale, and rubber gloves; and three prescription bottles with the names ripped off of them. The baggies were "very small, clear Ziploc bags"; the officer testified that "[a] lot of times I've seen those in recent arrests where they are used for package [or] sale to divvy up [drugs] into smaller amounts." In addition, the officer found $1,160 in cash in defendant's wallet, which was located in an open compartment on the driver's side door. In total, police seized 380

grams of confirmed methamphetamine and 2.3 grams of confirmed heroin.

Based on those events, defendant was tried before a jury and convicted of the offenses stated above. He appeals from the judgment of conviction, raising eight assignments of error and four supplemental assignments of error.

## II.   ANALYSIS

### A.   *Jury Unanimity Issues*

In his fifth, sixth, and seventh assignments of error, defendant contends that the trial court erred in instructing the jury, over his objection, that "at least 10 jurors must agree on your verdict," and in accepting nonunanimous verdicts on Counts 3 and 5. As the state concedes, and we agree, *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that the Sixth Amendment requires jury unanimity to convict a criminal defendant of a serious offense), requires reversal of those counts. Accordingly, we reverse and remand Counts 3 and 5. As to the remaining counts, for which the jury returned unanimous verdicts, the error is not reversible because it does not constitute structural error, and it is harmless beyond a reasonable doubt. *State v. Flores Ramos*, 367 Or 292, 305, 334, 478 P3d 515 (2020).

In his eighth assignment of error, defendant contends that the trial court also erred under *Ramos* in accepting the jury's nonunanimous findings on the subcategory factors the state alleged with respect to Count 2 (unlawful delivery of methamphetamine), specifically, whether the offense involved "substantial quantities" of the drug, ORS 475.900(1)(a)(D), or constituted a "commercial drug offense," ORS 475.900(1)(b).[4] We agree with defendant that the trial court erred in that regard. *See State v. Enloe*, 316 Or App 680, 681, 502 P3d 1213 (2021) (concluding that nonunanimous verdict on subcategory allegation was invalid in light of *Ramos*). We explain the consequence of that error in our

_____

[4] Those subcategory factors, if found by the jury, elevate the crime seriousness of the offense for purposes of the sentencing guidelines. ORS 475.900; *see State v. Unger*, 276 Or App 445, 448, 368 P3d 37 (2016) (so explaining). The legislature amended ORS 475.900 after the events giving rise to this case. *See* Or Laws 2021, ch 591, § 40. Because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

discussion and disposition of Count 2, addressed immediately below.[5]

B.   *Unlawful Delivery of Methamphetamine*

At trial, the state relied on a "*Boyd*" theory of delivery to prove the crime of unlawful delivery of methamphetamine as alleged in Count 2, presenting evidence that defendant was in a car with a large amount of methamphetamine, a firearm, $1,160 in cash, plastic gloves, baggies, and a scale.[6] *See State v. Boyd*, 92 Or App 51, 55, 756 P2d 1276, *rev den*, 307 Or 77 (1998), *overruled by Hubbell*, 314 Or App at 848 (2021) (holding that possession of a large quantity of drugs with the intent to deliver constitutes a substantial step toward delivery and thus is sufficient to constitute the completed crime of delivery as an "attempted transfer" under the definition of "delivery" in ORS 475.005(8)). Defendant did not object to the state's theory or move for a judgment of acquittal (MJOA) on the ground that the state's evidence was insufficient to establish the offense, and the jury unanimously found him guilty of Count 2.

In *Hubbell*, which was decided after defendant filed his opening brief in this case, we overruled *Boyd*, concluding that merely taking a substantial step toward a transfer of a controlled substance does not constitute the completed crime of delivery, only the inchoate crime of attempted delivery. *Hubbell*, 314 Or App at 867, 870-71. We held that delivery by an "attempted transfer," *see* ORS 475.005(8) (defining "delivery" for purposes of ORS 475.890 as "the actual, constructive or attempted transfer * * * from one person to another of a controlled substance"), requires an "incomplete or unsuccessful transfer" of a controlled substance. *Id.* at 870. Consequently,

> "[i]f a defendant has tried to actually transfer a controlled substance to another person, that defendant will be guilty

----

[5] We note that the jury also returned a nonunanimous verdict as to one of the commercial drug offense subcategory factors alleged with respect to Count 4 (unlawful possession of methamphetamine). But the jury unanimously found three other alleged factors, which is sufficient to establish that the offense constituted a commercial drug offense. ORS 475.900(1)(b). In any event, defendant does not raise any issues with respect to Count 4.

[6] The state argued the same with respect to Count 1 (delivery of heroin); as noted, the jury acquitted defendant of that offense.

of the completed offense, regardless of whether the transfer itself was successful. But, where a person has merely taken a substantial step toward the crime of delivery but has not yet attempted the transfer itself, the defendant will have committed the inchoate crime of attempted delivery of a controlled substance."

*Id.* at 870-71.

Having so concluded, we agreed with the defendant that the state's evidence was not legally sufficient to establish the crime of delivery. *Id.* at 872. However, we concluded that the evidence—namely, that the defendant possessed "an exceptionally large amount of fentanyl," which was enough for "hundreds of thousands of individual doses," as well as "separate packaging for smaller doses"—was legally sufficient to support a finding of a substantial step toward the completed crime of delivery. *Id.* at 871-72. That is, the evidence did "strongly corroborate a purpose of dealing drugs, advance that purpose, and provide verification of the purpose." *Id.* at 872. Accordingly, we reversed and remanded for entry of a conviction for attempted delivery of a controlled substance, the offense that the defendant "should have been convicted of committing rather than the completed crime." *Id.* at 873.

In light of that development in the law, defendant filed supplemental briefing challenging his conviction on Count 2. In his combined argument on four supplemental assignments of error, defendant essentially contends that, given *Hubbell*, the state's evidence was insufficient to prove the transfer element of the offense of delivery of methamphetamine, and we therefore must reverse his conviction on Count 2 as plain error.[7] The state concedes that the evidence was insufficient to show a transfer under *Hubbell*, and

---

[7] In particular, he asserts that the trial court plainly erred by (1) allowing Count 2 to be considered by the jury when the evidence was insufficient to convict; (2) allowing the prosecutor to misstate the law during closing arguments as to the requirements for proving delivery; (3) failing to instruct the jury on the lesser-included crime of attempted delivery; and (4) entering a conviction on Count 2. To the extent that defendant's third supplemental assignment of error presents a separate issue, we do not address it because defendant did not preserve that claim of error, and it does not satisfy the requirements for plain-error review.

that it was therefore plain error for the trial court to enter a conviction for the completed crime of delivery. However, the state contends that, in correcting the error, we should remand with instructions to enter a judgment of conviction for *attempted* delivery of methamphetamine, as we did in *Hubbell*. We agree with the state.

As an initial matter, we readily accept the state's concession that the trial court's entry of a conviction for the completed crime of delivery of methamphetamine was plain error under *Hubbell* and agree that it is appropriate to exercise our discretion to correct the error. *See, e.g.*, *State v. Dippre*, 320 Or App 317, 321, 512 P3d 835 (2022); *State v. Hernandez*, 320 Or App 270, 271-72, 512 P3d 475 (2022); *State v. Carr*, 319 Or App 684, 690, 511 P3d 432 (2022).

The real dispute between the parties is over the appropriate remedy for the error. Under Article VII (Amended), section 3, of the Oregon Constitution, we may remand for entry of a judgment of conviction for a lesser-included crime such as attempt when the jury necessarily found all the elements of that offense. *State v. Lopez*, 151 Or App 138, 142, 949 P2d 1237 (1997), *rev den*, 326 Or 465 (1998). "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). As discussed above, after *Hubbell*, where a person has taken a substantial step toward delivery of a controlled substance, but has not yet attempted the transfer itself, the person will have committed the inchoate crime of attempted delivery of a controlled substance, rather than delivery. 314 Or App at 870-71.

The state contends that—just as in *Hubbell*—the record here supports a conviction for attempted delivery of methamphetamine, pointing out that defendant was found to be in possession of a large quantity of the drug, as well as drug packaging materials, over $1,000 in cash, and a firearm. In addition, defendant possessed those items while driving around in a car, which, the state contends, "is a common method of delivering drugs." Thus, in the state's view, although the evidence did not establish a completed

transfer, it did establish that defendant had taken a "substantial step" toward commission of the crime, and the jury found as much when it unanimously convicted defendant of delivery under a *Boyd* theory.

Defendant asserts that we cannot determine on this record that the jury necessarily found that defendant took a "substantial step" toward delivery of methamphetamine—thus permitting the entry of a conviction for attempted delivery—for two reasons. First, defendant contends that the evidence is not sufficient to support such a finding and that the case is therefore more like *State v. Fischer*, 315 Or App 267, 269, 500 P3d 29 (2021), than *Hubbell*. Second, he contends that, because the jury was not unanimous on specific subcategory facts alleged with respect to Count 2, we cannot conclude that the jury unanimously found the facts necessary to establish attempted delivery. We consider, and reject, each argument in turn.

In *Fischer*, the trial court denied the defendant's MJOA on charges of delivery of heroin and methamphetamine within 1,000 feet of a school. 315 Or App at 268. The only relevant evidence was that the defendant possessed large quantities of the drugs—specifically, she regurgitated three bindles of heroin, which constituted 4.28 grams or 42 user amounts, and she also had 8.91 grams of methamphetamine, the equivalent of 89 user amounts, in her handbag. *Id.* at 269. Noting that the drugs were not broken down into separate user amounts, there was no evidence of distribution packaging materials or transaction records, and there was no indication of a plan or impending transaction, we concluded that the trial court had erred in failing to grant the defendant's MJOA because there was insufficient evidence of the transfer element of the offenses. *Id.* "Similarly," we held that the evidence was insufficient to show that the defendant took a substantial step toward commission of the crimes. *Id.* In other words, because the evidence was insufficient to support even a *Boyd* theory of delivery, the jury could *not* have lawfully found the elements of attempted delivery. Therefore, there was no basis for us to remand for conviction on the inchoate crime as we had done in *Hubbell*.

We disagree with defendant that this case is similar to *Fischer*. Although defendant is correct that the methamphetamine in his possession was not broken down into user amounts, he also had small plastic baggies, which are commonly used to package drugs,[8] a digital scale, plastic gloves, and over $1,000 in cash. Those facts distinguish this case from *Fischer* and, together with the large quantity of methamphetamine—380 grams—"strongly corroborate a purpose of dealing drugs, advance that purpose, and provide verification of the purpose." *Hubbell*, 314 Or App at 872. Moreover, the items were found in defendant's truck. Thus, as was the case in *Hubbell* and many of our cases following it, a factfinder could reasonably infer from the evidence presented that defendant possessed the methamphetamine for future transfer. *See Hubbell*, 314 Or App at 871-72 (large amount of fentanyl and separate packaging for smaller doses sufficient for jury to determine substantial step toward delivery); *Dippre*, 320 Or App at 323 (evidence of 12.77 grams of methamphetamine, a scale, unused plastic baggies, and tin foil legally sufficient to establish substantial step toward delivery, resulting in remand for entry of attempted delivery conviction); *State v. Buell*, 317 Or App 667, 671, 506 P3d 505 (2022) (evidence of large quantity of methamphetamine, enough for 17,000 individual doses, scale, open box of sandwich bags, and text messages asking about acquiring drugs supported conviction for attempted delivery). As in those cases, the record in this case is legally sufficient to establish that defendant took a substantial step toward the crime of delivery, which the jury necessarily found in convicting defendant of the completed crime under a *Boyd* theory.

We are also not persuaded by defendant's second argument. As noted above, the state alleged several subcategory facts in connection with Count 2, facts that, if found by the jury, would enhance defendant's sentence on that charge.

---

[8] Defendant argues that the smaller Ziploc bags "were not tied to the methamphetamine," noting that only the heroin, and not the methamphetamine, had been individually packaged. The jury could nonetheless infer from that evidence, together with the large quantities of methamphetamine, and the presence of digital scales, plastic gloves, and cash, that defendant possessed the methamphetamine, not for his individual use, but for future transfer. *See Hubbell*, 314 Or App 871-72, 873.

The jury returned nonunanimous verdicts with respect to some of those subcategory facts, specifically, whether defendant possessed "substantial quantities" of methamphetamine, as well as some of the "commercial drug offense" allegations, namely, whether defendant was in possession of a firearm, packaging materials, and eight grams or more of methamphetamine. As discussed, those nonunanimous findings are invalid under *Ramos*, and therefore cannot be used to enhance defendant's sentence. *Enloe*, 316 Or App at 681 (jury unanimity requirement applies to jury findings on subcategory facts). However, they have no bearing on the jury's *unanimous* decision to convict defendant of delivery of methamphetamine under a *Boyd* theory of delivery. In doing so, the jury necessarily found that defendant took a substantial step toward the commission of the crime of delivery, and, as noted, it did so unanimously. Further, as we have just concluded, the evidence in the record is legally sufficient to support that finding. Thus, contrary to defendant's assertion, the jury findings on the enhancement facts do not affect our determination that, as in *Hubbell*, Count 2 must be reversed and remanded for entry of a conviction for attempted delivery of methamphetamine.[9]

Lastly, we briefly address the dissent's contention that, because the jury in this case was not instructed on the definitions of either "attempt" or "intent," it is "a bridge too far" to conclude on this record that defendant intentionally engaged in conduct constituting a substantial step toward the commission of the crime of delivery of methamphetamine. 326 Or App at 521 (Pagán, J., dissenting). We agree with the dissent that we must limit our exercise of our power under Article VII (Amended), section 3, to instances where the factfinder necessarily found the elements of the lesser-included offense at issue. *See State v. Madison*, 303 Or App 737, 743, 466 P3d 92 (2020) ("A crime is a lesser-included offense of another crime if either of two circumstances exist: (1) the elements of the lesser offense necessarily are

---

[9] Unless the state elects to retry the subcategory allegations, the court shall enter a conviction for attempted delivery on Count 2 without those enhancements. *See Enloe*, 316 Or App at 682 (where jury verdict was unanimous as to conviction, but not unanimous as to subcategory allegation, state may elect to retry the subcategory allegation on remand; "otherwise, the record will reflect that defendant was found guilty on [that count] without that allegation").

included in the greater offense because the elements of the former are subsumed in the latter; or (2) all of the elements of the lesser offense are expressly set forth in the accusatory instrument." (Internal quotation marks omitted.)). And, we agree that the jury's instructions are one source of information that we should consider in answering that question. *See State v. Modrzejewski*, 311 Or App 739, 743-44, 490 P3d 172 (2021) (concluding that we could not remand for entry of a conviction for attempted third-degree assault where the jury only considered third-degree assault requiring a "knowing" mental state and was not instructed on a lesser-included or inchoate version of that crime). We acknowledge that, in the instant case, the jury was not instructed on either the meaning of "attempt" or "intent."

However, it is indisputable that *Hubbell* and its progeny concluded that, where a factfinder convicted a defendant of the crime of delivery based on a *Boyd* "attempted transfer" theory, a conclusion that was supported by the factual findings but invalid only due to the change in the law outlined in *Hubbell*, the factfinder also implicitly found that the defendant committed the inchoate crime of attempted delivery. *See Hubbell*, 314 Or App at 873 ("This case is unique in that, because of *Boyd*, defendant was essentially tried and found guilty of an attempt crime that had been erroneously elevated to a completed offense."); *see also Hernandez*, 320 Or App at 272 (concluding that "the jury necessarily found that defendant took a 'substantial step' toward the commission of the crimes of delivery of heroin and methamphetamine"); *Carr*, 319 Or App at 693 (same); *Buell*, 317 Or App at 671 (remanding for entry of judgment for lesser-included offense of attempted delivery of methamphetamine where evidence sufficient to support that conviction but did not support conviction for delivery). We acknowledge that there is some room for differing opinions as to whether a jury can necessarily find the facts relevant to convict a defendant of the inchoate crime of attempted delivery when they were not instructed on the definitions of "attempt" or "intent," and the Supreme Court may address or resolve that issue in its review of *Hubbell*. However, our existing case law requires remanding the instant case for entry of a conviction for attempted delivery. Defendant makes no argument that

*Hubbell* and its progeny were plainly wrong in that regard. Under those circumstances, the evidence here is legally sufficient to support the conclusion that defendant took a substantial step toward the commission of the crime of delivery.

C.   *Discovery Violations*

In his first four assignments of error, defendant challenges the trial court's exclusion of two of his witnesses, denial of his request for a continuance, and failure to declare a mistrial. The trial court concluded, after hearing an offer of proof for each witness, that defendant had committed a discovery violation by failing to disclose the witnesses and that exclusion of those witnesses, rather than a continuance or mistrial, was the appropriate remedy for the discovery violation.

On appeal, we review the trial court's conclusion that there was a discovery violation for legal error. *State v. Moss*, 147 Or App 658, 663, 938 P2d 215, *rev den*, 325 Or 491 (1997). We are bound by the trial court's factual findings, if supported by evidence in the record; in the event no findings were made and the evidence allows facts to be decided in more than one way, we presume the facts were decided in a manner consistent with the trial court's ultimate conclusion. *State v. Lindquist*, 141 Or App 84, 87-88, 917 P2d 510 (1996). Finally, we review the trial court's choice of sanction for abuse of discretion. *Id.* at 89.

The obligation on the defense to disclose most evidence in a criminal trial arises as a matter of statute. Subject to exceptions not relevant here,

> "the defense shall disclose to the district attorney the following material and information within the possession or control of the defense:
>
> "(1)   The names and addresses of persons, including the defendant, whom the defense intends to call as witnesses at the trial, together with relevant written or recorded statements or memoranda of any oral statements of such persons other than the defendant.
>
> "(2)   Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests,

experiments or comparisons, that the defense intends to offer in evidence at the trial.

"(3) Any books, papers, documents, photographs or tangible objects that the defense intends to offer in evidence at the trial."

ORS 135.835. The statutory duty to disclose witnesses applies to both a defendant and their attorney. *State v. Ben*, 310 Or 309, 315, 798 P2d 650 (1990). That obligation must be performed "as soon as practicable" after the filing of the indictment. ORS 135.845(1).

Upon finding a violation, "the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate." ORS 135.865. As a sanction for a discovery violation, a court may order exclusion of a witness only when exclusion "achieves the purpose of the discovery statutes and the other party has been prejudiced." *Ben*, 310 Or at 317. A trial court does not abuse its discretion in excluding a witness or evidence when it considers sanctions short of exclusion and determines that no sanction short of exclusion would remedy the prejudice to the other party. *Lindquist*, 141 Or App at 89. With those principles in mind, we analyze each proposed witness separately.

1. *Witness Martin*

After the state concluded its case-in-chief and rested, defense counsel notified the court that "I was recently or today informed of a potential witness that would be able to talk about Miss Klein's[10] previous involvement in drug trafficking activity and weapons possessions." The next day, the state provided the court with an email stamped at 6:41 p.m. on the previous evening that provided a summary of the information a defense investigator had learned from witness Martin. The prosecutor represented that "that was the first and extent of discovery that the state has received in this case." The state argued that Martin should not be

---

[10] As noted above, Klein was the passenger in defendant's truck at the time of the incident that led to defendant's arrest.

allowed to testify. After some colloquy between the court and the state, Martin testified in an offer of proof.

During direct examination in the offer, Martin explained that he had "known [defendant] since we were kids. In fact, I got him on [*sic*] first haircut." Martin said that he had known Klein for a little more than a year and one-half and had seen her "[p]robably 13 or 14" times.

Martin testified that two days before the police pursuit and crash, he had met with defendant and Klein in defendant's truck, where they spent around an hour and one-half. As Martin was sitting in the backseat of the truck, Klein asked him to pass forward her handbag. In the process of handing the bag to Klein, Martin testified that he saw in the handbag a "large-framed handgun, dark in color," a "CD case," a "digital scale of some sort," and some "bandanas that were tied together." Finally, Martin explained that defendant did not have the use of his legs and had customized hand controls for the throttle and brake in his truck. In his opinion, because those hand controls were attached to the steering column, "[he did not] see how there could be a bag strapped to the steering column."

During cross-examination, Martin stated that he had been friends with defendant for decades and had always been in touch with defendant's family. During the year before the incident of the pursuit and crash, Martin stated that he and defendant would often "hang out" and "go have breakfast," and that at least a couple of times, defendant came to help Martin when Martin had vehicle problems.

With respect to Klein, Martin testified that he had previously purchased methamphetamine from her, that "she had *** a controlling-type relationship" with defendant, and that it was Martin's belief that defendant "was acting basically at the direction of Miss Klein."

The court determined, based on Martin's testimony, that defendant "certainly knew of Mr. Martin's existence and whereabouts and what he may or may not have seen, certainly after September 1st, given the conversation that Mr. Martin indicated occurred in the truck on August 30th." The court added that, "to the extent that it's suggested

that this is just newly acquired evidence, I do not find that. [Defendant] certainly knew about this, the existence of Mr. Martin and what Mr. Martin may have seen." The court concluded that

> "[defendant] did commit a discovery violation by not stating or announcing the possibility that Mr. Martin would become a witness—would be a witness prior to the state's resting its case in the middle of trial.
>
> "I find that the only appropriate remedy here is to exclude Mr. Martin's testimony. That's even after having considered the alternative grounds of allowing a postponement for the state to investigate not only Mr. Martin's claims of what may have occurred on August 30th, the nature of Mr. Martin's other testimony concerning parties with Ms. Klein, how he knows her, the existence of any prior convictions."

The factual findings made by the court regarding defendant's knowledge of Martin's whereabouts and likely evidence are supported by evidence in the record, and we are bound by them. *See Lindquist*, 141 Or App at 87 ("Defendant's knowledge and intent are questions of fact[;] we are bound by the trial court's factual findings, if supported by evidence in the record."). Moreover, defendant's opening statement in trial suggested that the defense strategy was to blame Klein for the drugs in the truck, which supports an inference that the defense had some notion that it would present evidence of Klein's culpability—and therefore some idea about who could present that evidence.[11] The trial court did not err by concluding that defendant committed a discovery violation when he failed to disclose the identity of Martin, who was known to him as a longtime friend and was present with defendant and Klein in defendant's truck within two days of the pursuit and crash.

In light of the timing of the revelation of Martin, plus the unavailability of a juror for an extension of the trial, the trial court did not abuse its discretion by excluding Martin from testifying at trial. The court considered

---

[11] During opening argument, defense counsel stated, "Keep in mind, please, there are two people in this vehicle during this chase, and that there will be a treasure trove of information that was not looked for and not—and is not brought to you about those elements, the delivery and the possession."

whether "exclusion of the witness was too extreme of a remedy" and considered whether postponement would be sufficient. The court expressed concern that a delay in the proceedings for the state to investigate Martin's evidence would "[e]ssentially *** be a mistrial." On this record, the trial court did not abuse its discretion by excluding Martin rather than granting defendant's request for a continuance or declaring a mistrial.

2.   *Witness Dupree*

Immediately following the court's ruling on Martin, there was a brief recess. After returning, defense counsel stated,

> "Your Honor, I hate to—I hate to do this. I also just got information about a gentleman named James Dupree. My investigator talked to him this morning. We had his name two days ago. ***
>
> "It's Miss Klein's former landlord [who] has told [the investigator] that he evicted Miss Klein for dealing controlled substances out of her residence."

Defense counsel admitted that they had "some vague information about someone [who] might be able to say something" before trial started, but that it had taken several days to finally connect with Dupree. That moment was the first that the defense had informed the state of Dupree. Defense counsel explained that he had only learned of the substance of what Dupree could testify to that morning.

The court considered an offer of proof consisting of the investigator's testimony regarding what Dupree would say if allowed to testify.

The investigator testified that she had been assigned to find Dupree in the past few days. In addition to searching for Dupree, the investigator was also searching for Klein to serve a subpoena for her to appear at the trial. Once the investigator had connected with Dupree, Dupree explained that he had rented a room to Klein, likely around the end of September, and that she had lived there for about a month. She was evicted after Dupree discovered that she was selling drugs, specifically "white and brown," through

a Facebook messenger thread she had left open on Dupree's computer.

The trial court ruled that Dupree's testimony would also be excluded. The court noted that Klein had allegedly been evicted in October, "about the time *** when [defendant's] indictment was filed," and that defendant "had some sort of relationship" with Klein. The court stated that it was making similar findings as it had made with regard to witness Martin, which we understand to mean that defendant must have been aware of Dupree and the testimony Dupree might be able to offer at a time well before trial. However, as explained below, that factual finding with regard to Dupree is not supported by the evidence, and therefore, we are not bound by it.

First, there is nothing in the record to suggest that defendant and Klein were in communication after the pursuit and crash, which is a logical prerequisite to finding that defendant was aware of Dupree or what Dupree could say about Klein's own drug dealing. The investigator relayed information indicating that Klein had not lived in Dupree's property until about a month after the incident and there was no suggestion that the circumstances surrounding her eviction were communicated to defendant. Indeed, at the time of trial, defendant's investigator was trying to find Klein to subpoena her to the trial, which supports an inference that defendant was not then in communication with Klein.

Moreover, the tenuous connection between defendant and Dupree, unlike the longtime friendship between defendant and Martin, does not allow for the same inference as existed with respect to defendant's knowledge of witness Martin. The record does not support a finding that defendant had sufficient information about either Dupree's identity or what Dupree could say *vis-à-vis* Klein to conclude that defendant (or counsel) could have "reasonably predict[ed]" that Dupree would be called as a witness. *See State v. Young*, 94 Or App 683, 689, 767 P2d 90 (1989) (explaining that disclosure obligation is triggered when defense can reasonably predict witness or evidence will be introduced at trial).

The state argues that the "only logical inference that can be drawn from the fact that the defense wanted to locate and interview Dupree is that the defense knew that Klein had been evicted for selling drugs and Dupree could attest to that fact," because "if there was no awareness of the relevance of his testimony, there would be no reason for the defense to try to locate and interview him in the first place." That argument proves too much. Defense counsel stated that they had "some vague information about someone [who] might be able to say something" the day before trial and were not able to talk to Dupree until after the trial had commenced. The investigator testified that she had Dupree's name before trial but did not confirm Dupree as the witness until that morning. It does not follow that possession of some knowledge that *might* lead to admissible evidence is sufficient to trigger the obligation to disclose an unknown witness to the other side.

Because there is no support in the record for the court's factual findings as to defendant's knowledge and intent, we conclude that the court legally erred in determining that there was a discovery violation with respect to witness Dupree.

However, we will affirm a judgment, notwithstanding an error, if there is little likelihood that the error affected the verdict—in other words, if the error was harmless. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Due to our disposition of other counts above, the only remaining counts to which Dupree's testimony would have been relevant are Counts 2 and 4 (unlawful delivery of methamphetamine and unlawful possession of methamphetamine).

We are not convinced that Dupree's testimony had any likelihood to affect the jury's verdicts on those counts. Whether or not Klein was evicted for dealing drugs from Dupree's apartment, more than a month after the pursuit and crash, has little bearing on whether defendant possessed methamphetamine or took a substantial step toward the delivery of methamphetamine at the time of the pursuit and crash. Moreover, the jury was specifically instructed that "[p]ossession may be individual or joint. Therefore, two

or more persons may be in possession of the same thing when they each have the power and the intent to control it jointly." Thus, even if the jury were presented with and credited information about Klein's subsequent drug dealing activities, it does not follow that that evidence was likely to affect their verdict, given the evidence showing that defendant was in either joint or individual possession of a substantial quantity of methamphetamine when he attempted to elude police.

Dupree's testimony would have suggested that Klein was a drug dealer. However, that evidence does not negate the substantial evidence in the record that defendant was also dealing drugs. In other words, even if the jury believed from Dupree's testimony that Klein was a drug dealer, the jury would at most have found that defendant and Klein were engaged in possession and attempted delivery of methamphetamine together, given the evidence of large amounts of methamphetamine, packaging materials, and a digital scale found in defendant's truck as well as $1,160 found in defendant's wallet. We note again that, significantly, a bandana containing a very large quantity of methamphetamine was attached to the steering column of defendant's truck. A second bandana with another large piece of methamphetamine wrapped inside of it was found in the driver's area near the steering column. And, defendant was the driver of the truck in control of the steering wheel. The error in excluding Dupree's testimony was harmless.

Conviction on Count 2 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine; convictions on Counts 3 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

**PAGÁN, J,** concurring in part, dissenting in part.

Although I agree with the majority opinion regarding the errors that were committed below, I disagree regarding the disposition of Count 2. Instead of remanding for entry of a judgment of conviction for attempted delivery of methamphetamine, I believe we are required to simply reverse and remand that count.

Under Article VII (Amended), section 3, of the Oregon Constitution, if we can determine what judgment should have been entered, we may remand with instructions to enter a judgment for a different conviction. In determining "what judgment should have been entered in the court below," we are required to consider all of the matters submitted, which include "the instructions of the court to the jury." Or Const, Art VII (Amended), § 3. Indeed, the jury instructions play a vital role in that determination. *See, e.g.*, *State v. Modrzejewski*, 311 Or App 739, 744, 490 P3d 172 (2021) (when jury was not instructed on a lesser-included or inchoate version of the charged crime, we could not make the determination required to enter a conviction for the attempted crime).

Here, with respect to the delivery of methamphetamine count, the jury was provided two relevant instructions. First, the jury was instructed that in order to find defendant guilty, they must conclude beyond a reasonable doubt that defendant "knowingly delivered methamphetamine." Second, as a definition, the jury was instructed that "deliver or delivery" means "[t]he actual, constructive, or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance." During closing arguments, the state acknowledged that it had not shown "a transaction," but the state explained that "possession with the intent to deliver constitutes delivery even when no actual transfer is shown."

But the jury was not provided with an instruction on the meaning of "attempt" under ORS 161.405(1), which requires intentionally engaging in conduct that constitutes a substantial step toward the commission of the crime.[1]

---

[1] The uniform jury instruction for attempt provides that "[a] person attempts [to commit a crime] when [he/she/they] intentionally [engage/engages] in conduct that constitutes a substantial step toward the commission of a crime in which the defendant intends to take part personally." UCrJI 1040. It further explains that "[a] substantial step is more than mere preparation. A substantial step means that the defendant's conduct (1) would or does advance the criminal purpose of the crime charged and (2) provides some verification of the existence of the criminal purpose." *Id.* The jury was also not instructed with the definition of "intentionally." The uniform jury instruction states that a person acts intentionally "when that person acts with a conscious objective" to cause a particular result or engage in particular conduct. UCrJI 1035.

A substantial step is more than mere preparation. *State v. Hubbell*, 314 Or App 844, 861-62, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022). "An 'attempt' under ORS 161.405(1) requires an act that is 'strongly corroborative of the actor's criminal purpose' such that it '(1) advance[s] the criminal purpose charged and (2) provide[s] some verification of the existence of that purpose.'" *Id* at 872 (quoting *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991)); *see State v. Kyger*, 369 Or 363, 371, 506 P3d 376, *adh'd to as modified on recons*, 369 Or 604, 509 P3d 112 (2022) ("to be a substantial step, the defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose").

The majority remands with instructions to enter a judgment of conviction for attempted delivery of methamphetamine, but that disposition requires us to conclude from the record that the jury necessarily found that defendant intentionally engaged in conduct constituting a substantial step toward the commission of the crime of delivery of methamphetamine. For me, that is a bridge too far, especially given the jury's nonunanimous answer to the sentence enhancement question of whether the offense involved "substantial quantities of a controlled substance." Based on the record, I believe that we can only speculate as to whether the jury would have found that defendant intentionally engaged in a substantial step towards the delivery of methamphetamine. From the amount of methamphetamine found, which was much less than the "exceptionally large amount of fentanyl" at issue in *Hubbell*, 314 Or App at 871, as well as the amount of cash found, and the other circumstances of the case, the jury could have concluded that defendant was preparing to deliver methamphetamine but had not attempted to do so. More importantly, the parties below never had an opportunity to develop the relevant facts or make arguments pertinent to that distinction, because the jury was never instructed regarding all of the elements of the crime of attempted delivery of methamphetamine.

Article VII (Amended), section 3, provides us with the extraordinary power to direct the entry of a judgment of conviction when we "can determine what judgment should have been entered in the court below," but it is a power that

we should employ sparingly, especially in criminal cases. Early jurists interpreting that constitutional provision understood the need for caution. *See* Hall S. Lusk, *Forty-Five Years of Article VII, Section 3, Constitution of Oregon*, 35 Or L Rev 1, 22 (1955) (describing early cases and finding only one case "in which the court re-examined the facts and entered a judgment of conviction of a lesser crime").[2] In that one case identified, *State v. Ragan*, 123 Or 521, 531-33, 262 P 954 (1928), the defendant had been convicted of assault and robbery while armed with a dangerous weapon, but an erroneous jury instruction regarding the weapon did not undermine the jury's findings that the defendant committed an act of assault and an act of robbery. As a result, the court remanded with instructions to enter a judgment convicting the defendant of assault with intent to rob. *Id.* at 534. In my view, we should limit our exercise of the power to modify judgments to those kinds of cases; namely, cases in which the jury was properly instructed as to the law of the proposed modified judgment, and where the direct and implied findings from the jury's original verdict support such a modification.

Underlying my concern about the majority's disposition of Count 2 is the notion that the litigants, not the court, are in control of what is being litigated. The state, through its district attorneys, alleges the crimes for which a defendant is being prosecuted. Armed with such knowledge, a defendant is empowered to enter a plea of guilty or not guilty, negotiate for a plea bargain, raise defenses, and prepare a defense for trial. Each side may propose jury instructions. UTCR 6.060. Those instructions, particularly the instructions addressing the elements of the charged crimes, define the playing field for the state and defendant alike. That is, the instructions explain exactly which elements the state proposes to prove beyond a reasonable doubt, and therefore, which elements the defendant must be prepared to defend

---

[2] *See, e.g.*, *State v. Rader*, 62 Or 37, 41, 124 P 195 (1912) ("If the evidence were clear and without contradiction, we would ourselves try out the case here, as we have a right to do under our amended Constitution, but it is wholly circumstantial, and the facts can be much better determined by a jury *** than by us."); *State v. Davis*, 70 Or 93, 101, 140 P 448 (1914) ("[W]e are not permitted to theorize as to what the verdict of the jury should have been if the issues had been properly presented.").

against. But here, defendant had no opportunity to develop facts or prepare a defense regarding whether he engaged in conduct that amounted to a substantial step and that qualified as more than mere preparation.

If we tacked true to the logic of *Hubbell*, we would be unable to say what the correct judgment in this case should have been. The factual findings that the jury must have reached in determining that defendant was guilty under the erroneous *Boyd* theory of delivery do not also mean that it found facts that constituted a substantial step. Possession of methamphetamine without evidence that proves beyond a reasonable doubt that the defendant engaged in intentional conduct that constituted a substantial step toward delivery is simply possession of methamphetamine—the crime of conviction in Count 4.

The majority's decision to remand for entry of a judgment of conviction of attempted delivery of methamphetamine, even though the jury was not instructed on all the elements of that crime, also implicates defendant's federal constitutional rights. "[T]he failure to submit a required element of an offense to the jury is a federal constitutional error." *State v. Perkins*, 325 Or App 624, 630, 529 P3d 999 (2023) (citing *Neder v. United States*, 527 US 1, 8, 119 S Ct 1827, 144 L Ed 2d 35 (1999)). "[T]he omission of an element from the court's instructions deprived defendant of his right under the Sixth and Fourteenth Amendments to a jury determination on an element essential to guilt." *Perkins*, 325 Or App at 630. In such cases, to affirm, we must be able to conclude that the error was harmless beyond a reasonable doubt. *Id.* at 630-31. Here, the error is related, but even more serious, because the jury was not instructed on all the elements of the crime *and* the jury did not convict defendant of attempted delivery of methamphetamine. Any discussion about what a jury would have found, based on the evidence that was presented, but with a theoretical, imagined jury deliberation, is, at best, a re-trying of the case with a new set of instructions for which only three judges are making a determination.[3] Thus, the appropriate disposition of Count 2 is to reverse and remand for a new trial, to allow both

_____

[3] Notably, the three judges trying the case anew are not unanimous.

parties to prepare for a trial on the appropriate instruc-
tions, and for a jury to make findings consistent with those
instructions in the first instance.

Respectfully, I concur in the majority opinion as to
the errors below, but I dissent from the majority's disposi-
tion of Count 2.