No. 52 January 31, 2024 425

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES GARY TACIA,
*Defendant-Appellant.*

Jackson County Circuit Court
19CR24287; A175706

Timothy Barnack, Judge.

Argued and submitted April 26, 2023.

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Conviction on Count 1 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine; remanded for resentencing; otherwise affirmed.

Pagán, J., concurring in part, dissenting in part.

## MOONEY, J.

Defendant appeals a judgment of conviction, entered after a jury trial, for unlawful delivery of methamphetamine (Count 1), ORS 475.890;[1] unlawful manufacture of methamphetamine (Count 2), ORS 475.886;[2] and unlawful possession of methamphetamine (Count 3), ORS 475.894(1).[3] He contends in his first three assignments of error that the trial court erred by failing to *sua sponte* acquit him of all counts because there was obviously insufficient evidence that he possessed the quantity of methamphetamine necessary for each offense and the sentence imposed by the court. As we will explain, it was not obvious that the evidence did not support a finding that defendant constructively possessed 10 or more grams of methamphetamine and we, therefore, reject the first assignment and affirm the conviction for unlawful possession of 10 or more grams of methamphetamine (Count 3). As we will also explain, it was not obvious that the evidence did not support a finding that defendant manufactured 100 or more grams of methamphetamine and we, thus, reject the third assignment and affirm the conviction for unlawful manufacture of methamphetamine (Count 2) as well.

In his second and fourth assignments, defendant relies on our decision in *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *aff'd*, 371 Or 340, 537 P3d 503 (2023) (*Hubbell I*), as a basis for plain error review of his delivery conviction. The parties briefed and argued this matter before the Supreme Court issued its decision in *State v. Hubbell*, 371 Or 340, 537 P3d 503 (2023) (*Hubbell II*), in which it affirmed *Hubbell I*. As we will explain, *Hubbell II* requires us to reverse the delivery conviction (Count 1). But because we also conclude that the evidence was sufficient to establish the lesser included offense of attempted delivery, and because the jury necessarily found the elements of

---

[1] ORS 475.890 provides, in part: "(1) *** it is unlawful for any person to deliver methamphetamine."

[2] ORS 475.886 provides, in part: "(1) *** it is unlawful for any person to manufacture methamphetamine."

[3] ORS 475.894 provides, in part: "(1) It is unlawful for any person knowingly or intentionally to possess methamphetamine[.]"

attempted delivery, we remand for entry of a judgment of conviction for attempted delivery on Count 1.[4]

## I.   PLAIN ERROR REVIEW

Defendant did not move for a judgment of acquittal (MJOA) on any count in the trial court, and therefore, he failed to preserve the arguments he now makes on appeal. In general, issues "not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). We do, however, have discretion to correct an error that is "plain." ORAP 5.45(1); *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). "An error is 'plain' when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences." *State v. Durant*, 327 Or App 363, 364, 535 P3d 808 (2023) (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)).

Defendant contends that the trial court plainly erred by not *sua sponte* acquitting him of the charged offenses, and he urges us to exercise our discretion to correct those errors. "Because defendant did not preserve [his] argument[s] below, [he] faces the additional obstacle of establishing that the trial court committed an error that is plain." *State v. Gayman*, 312 Or App 193, 196, 492 P3d 130 (2021). To establish an error of law here, defendant must demonstrate that it is obvious and not reasonably in dispute that no reasonable trier of fact could have found that the state proved the essential elements of the charged crimes beyond a reasonable doubt.

## II.   STANDARDS OF REVIEW

A.   *Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the state, *State v. Daniels*, 348 Or 513, 518, 234 P3d 976 (2010), and we "resolve all conflicts of evidence in favor of the state and give the state the benefit of all reasonable inferences." *State v. Rader*, 348 Or 81, 91, 228 P3d 552 (2010).

---

[4] We reject as unpreserved defendant's fifth assignment challenging the court's imposition of an upward departure sentence without further discussion.

B.  *Instructional Error*

We review a court's jury instructions for legal error. *State v. Wier*, 260 Or App 341, 345, 317 P3d 330 (2013). We review the instructions as a whole and will not reverse unless the instruction likely "'created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case.'" *State v. Maney*, 244 Or App 1, 7, 260 P3d 547 (2011), *rev den*, 351 Or 545 (2012) (quoting *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)) (brackets in original).

### III.  FACTS

The facts occurred during a traffic stop, the legality of which is not disputed. We draw the facts, in accordance with our standard of review, from the testimony and exhibits in the record.

Jackson County Sheriff's Deputies Tuff and Grieve stopped defendant while defendant was driving a car with three passengers. Mahoney occupied the front passenger seat and there were two others seated in the back seat. The car was registered to Mahoney's mother or brother. As lead investigator, Tuff approached defendant on the driver's side of the vehicle and Grieve approached Mahoney on the passenger side of the vehicle. Tuff asked whether the car was insured. Mahoney responded that it was covered by Farmers and Tuff asked for proof of insurance. When Grieve approached Mahoney, he observed that she was wearing a "zip-down jacket" or "sweatshirt" and he "saw her hand shoving stuff towards her left side." When asked if he observed Mahoney "grab it from the center console—or something and put it into her sweatshirt," Grieve testified:

> "I did, yes. The—the transfer that I saw was something up to her right hand, which was then stuffed to the left side of—in her jacket."

During the stop, an officer with an assigned narcotics dog was called to assist and the dog alerted that officer to the "presence of a narcotic odor within the vehicle." Grieve then performed a "brief pat-down" of Mahoney and called for a female officer, Stone, to conduct a more thorough search. Grieve advised Stone that Mahoney had "disclosed

[that] she does have dope on her" and that "[s]he says she has 4 ounces." Ultimately, a red makeup bag with several baggies containing a total of 98.95 grams of methamphetamine, several unused baggies, two capped needles, and a digital scale was removed from the sleeve of Mahoney's sweatshirt.

In the meantime, Tuff had questioned defendant, who admitted that he had "a little bit" of methamphetamine that he described as a "ball" that "was just cut." Tuff later testified that when he heard defendant say that it "was just cut" he understood that to mean "that it was just cut off or broken off of a bigger piece of methamphetamine" or that some other substance had been mixed in "to make a smaller quantity a little bigger." Tuff searched defendant and found 4.3 grams of methamphetamine in a baggie located in defendant's pocket. While Tuff field-tested the contents of that baggie, defendant asked if Tuff would like to borrow "his scale." The only scale found in the vehicle was the one found in Mahoney's makeup bag. When Tuff asked whether defendant had any needles, he replied that he "might" and he made a remark about his "girlfriend," but the full comment was not audibly captured on Tuff's bodycam. Defendant and Mahoney both denied that she was defendant's "girlfriend," although defendant also referred to Mahoney as "honey" and "baby" in a recorded jailhouse call.

Mahoney testified that before the traffic stop, she and defendant had been at her house, and that, at the time of the stop, she was giving defendant a ride to his car. They did not make any stops between the time they left the house and the time they were pulled over by Tuff and Grieve. In total, deputies seized just over 100 grams of methamphetamine from defendant and Mahoney, which Tuff testified is a dealer quantity.

## IV.    CONSTRUCTIVE POSSESSION

Defendant notes that the amount of methamphetamine found in his personal possession was insufficient alone to prove that he had committed the crimes with which he was charged, and he contends that the evidence is plainly insufficient to establish that he constructively possessed the methamphetamine found in Mahoney's makeup

bag. Specifically, defendant argues that the fact that he was driving the car and that Mahoney may have been his girlfriend do not establish that he had a right to control all the drugs in the car. The state counters that the evidence is legally sufficient, or at least not plainly insufficient, because defendant physically possessed some of the methamphetamine found in the car, the makeup bag had been accessible to him in the center console before the stop, and defendant referred to the scale as his own.

"Proof of either actual or constructive possession" is sufficient to establish that defendant possessed a controlled substance. *State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999). To prove constructive possession of a controlled substance, the state must show that the defendant exercised control over or had the right to control the substance. *State v. Fry*, 191 Or App 90, 93, 80 P3d 506 (2003). One may exercise control jointly with other persons. *State v. Sherman*, 270 Or App 459, 461, 349 P3d 573, *rev den*, 357 Or 596 (2015). Mere proximity to a controlled substance "is not a sufficient basis from which to draw an inference of constructive possession[.]" *Fry*, 191 Or App at 93. The state must link the defendant's proximity to the substance with a right to control it, and defendant's "own statements can provide the necessary link." *Id.* at 94. Constructive possession "may be established by circumstantial evidence." *State v. Leyva*, 229 Or App 479, 483, 211 P3d 968, *rev den*, 347 Or 290 (2009). We note, however, that if defendant's statements amount to a confession that he committed the crime of possessing a controlled substance, then his confession must be corroborated by other evidence independent of his own statements. *See State v. Lerch*, 296 Or 377, 394, 677 P2d 678 (1984).

We have issued more than a handful of opinions assessing the sufficiency of the evidence presented to establish constructive possession in drug possession and other criminal cases. We have, for example, concluded that evidence of a defendant's close connection to the house where drugs were located, including mail addressed to him at that house, his own statement that he had "a $400-per-day crack cocaine habit and that he supported that habit by stealing

cocaine from nearly all of the approximately 50 buyers who visited the house each day[,]" and the fact that he had a crack pipe on his person, was sufficient to establish constructive possession of the drugs found in the house. *State v. Presley*, 175 Or App 439, 441-42, 446, 28 P3d 1238 (2001). We likewise concluded that the evidence was sufficient to support an inference that the defendant constructively possessed marijuana where a large quantity was found in garbage bags in the back seat and in the cargo area of a sport utility vehicle in which defendant and the driver had been driving for a considerable distance, and where the defendant lied to the police about the driver's identity and had a significant amount of cash in his pockets. *Leyva*, 229 Or App at 484.

In *State v. Coria*, 39 Or App 507, 511, 592 P2d 1057, *rev den*, 286 Or 449 (1979), we concluded that the evidence was sufficient to support constructive possession of heroin discovered in an upholstery panel next to the rear seat of the car in which the defendant drove with two other persons to deliver narcotics between California and Oregon. We concluded that, given evidence that the defendant had traveled with the other two individuals for one week, a reasonable factfinder could find that the defendant constructively possessed the drugs because he and the driver were "engaged in a joint endeavor to transport the narcotics from Los Angeles to Umatilla." *Id.* We reached a similar conclusion in *Sherman*, where a dealer amount of cocaine was found hidden in the passenger's vagina after the defendant-driver had told her to "'keep her mouth shut'" during a traffic stop. 270 Or App at 460. In that case, there was evidence that they were both associated with an apartment suspected of illegal drug activity and that drugs were found in a pair of defendant's pants found in the apartment. *Id.* at 460-61. That evidence was sufficient to permit an inference that the defendant and his passenger were engaged in a joint enterprise to sell cocaine which, in turn, permitted an inference that the defendant had a right to control the drugs found in his passenger's vagina. *Id.* at 463.

We reached a different conclusion in *State v. Kulick*, 314 Or App 680, 681-82, 497 P3d 789 (2021), where we held

that the evidence was insufficient to establish that defendant constructively possessed a "tooter," a tool for using methamphetamine, discovered in the center console of the car he was driving. Although the defendant admitted that he sometimes used drugs, the evidence did not link his past drug use to a right to control the tooter. *Id.* at 681-82, 684. The car did not belong to him, he denied ownership of the tooter, and he was not under the influence when he was stopped. *Id.* at 684.

In *Fry*, we similarly concluded that the evidence was insufficient to support constructive possession of methamphetamine found in a parked car in which the defendant and his companions were seated, where a syringe was found on the person of two passengers and a third was found under another seat, and there was no evidence of needle sharing. 191 Or App at 96. There was "nothing more than defendant's presence in the car to connect him to that syringe— no link between his proximity and some right to control." *Id. See also State v. Borden*, 307 Or App 526, 531, 476 P3d 979 (2020) (holding that the evidence was insufficient to establish constructive possession of methamphetamine located under the defendant's car seat where the car did not belong to the defendant and she did not ride in it regularly or for extended periods of time, other passengers conferred about drugs but did not mention the defendant in their discussion, and there was no evidence that the defendant had used methamphetamine while she was in car); *State v. Keller*, 280 Or App 249, 254-55, 380 P3d 1144 (2016) (holding that a police officer did not have probable cause to believe that the defendant constructively possessed heroin where the defendant had been sitting in the driver's seat of a parked car but the plastic baggie containing residue was located out of his line of sight); *Daniels*, 348 Or at 520-23, (holding that the defendant's proximity to property owned by his romantic partner did not give rise to an inference of a partnership relationship or a right to control that property).

Not surprisingly, defendant focuses on those cases in which we concluded that the evidence of constructive possession was insufficient, and the state argues that those cases are distinguishable and inapposite. Defendant likewise

distinguishes the facts of this case from cases where we concluded that there was sufficient evidence of constructive possession. More importantly, though, all of those cases concerned assignments of error that had been preserved for appeal. And as we have already explained, because defendant did not move for a judgment of acquittal, his burden on plain-error review is more onerous than if he had done so. He must establish that the trial court plainly erred when it failed to enter a judgment of acquittal in the absence of a motion requesting that it do so.

We think it is reasonably in dispute whether rational jurors could draw the necessary inferences about constructive possession on this record. Viewing the evidence in the light most favorable to the state—which is the required standard of appellate review—we conclude that it is not plain or obvious that a rational jury could not find that the state established beyond a reasonable doubt that defendant constructively possessed the methamphetamine in Mahoney's makeup bag.

There is evidence from which a jury could find that the makeup bag holding nearly 100 grams of methamphetamine, a scale, and baggies, was in the console of the car and was equally accessible to defendant up to the point that Mahoney moved it to her sweatshirt. But this is not a case of mere proximity. Defendant personally possessed a portion of the methamphetamine seized by law enforcement, and he stated that it had just been "cut." Defendant offered "his scale" to Tuff during the stop, and the only scale in the vehicle was in Mahoney's makeup bag. Although nothing in the record suggests that defendant or Mahoney were under the influence at the time of the traffic stop, defendant told the deputy that he might find needles in the search, and there were two in Mahoney's makeup bag. Defendant was driving a car registered to Mahoney's mother or brother and he referred to Mahoney as "honey" and "baby," suggesting an established relationship marked by some level of trust and familiarity. We cannot say, on that record, that the evidence was plainly and obviously insufficient to establish defendant's constructive possession of the items in Mahoney's makeup bag.

## V.   MANUFACTURING

Defendant further argues that the evidence is plainly insufficient to show that he packaged or repackaged the methamphetamine found in Mahoney's makeup bag. ORS 475.005(15) defines manufacture as "the production, preparation, * * * or processing of a controlled substance, * * * and includes any *packaging or repackaging* of the substance or labeling or relabeling of its container." (Emphasis added.) While packaging a substance does not include removing a substance from its package and giving a smaller piece of that substance to another individual, *State v. Tellez*, 170 Or App 745, 751, 14 P3d 78 (2000), the evidence here would permit a jury to infer that defendant participated in packaging the methamphetamine into multiple bags.

Defendant and Mahoney were together in her home before entering the vehicle, and after methamphetamine was discovered on his person, defendant described the substance as having just been "cut." Whether that meant it had recently been broken off of a bigger piece of methamphetamine or that it had been mixed with some other substance, it was consistent with preparing a controlled substance for distribution. Finally, the methamphetamine discovered in the makeup bag was packaged in multiple baggies alongside unused packaging. We conclude that it is neither plain nor obvious that a reasonable factfinder could not conclude that defendant participated in packaging the methamphetamine into multiple bags on that record. The trial court did not plainly err when it did not *sua sponte* acquit defendant of the possession and manufacturing charges.

## VI.   DELIVERY – POST-*HUBBELL II*

In his second and fourth assignments of error, defendant challenges his delivery conviction under *Hubbell I*, arguing that the evidence was plainly insufficient, and that the jury instruction on delivery was plainly erroneous. In light of *Hubbell II*, we conclude that the trial court plainly erred and we exercise our discretion to correct the error for the reasons expressed in *State v. Jury*, 185 Or App 132, 139-40, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (failing to preserve error was justified because the trial court

could have properly rejected the challenge under existing authority and the error was not harmless). *See also State v. Hernandez*, 320 Or App 270, 271-72, 512 P3d 475 (2022) (citing *Jury* for same proposition).

ORS 475.005(8) defines delivery as the "actual, constructive or *attempted transfer*" of a controlled substance. (Emphasis added.) In *Hubbell II*, the Supreme Court held that evidence of possession with intent to sell is not alone sufficient to convict a defendant of delivery under an attempted transfer theory:

> "We understand the statute to mean that a person has engaged in an 'attempted transfer' if the person has made some effort to undertake the *act or acts* of causing controlled substances to pass from one person to another. Steps preceding such an effort are insufficient to show an attempted transfer, even if they are consistent with a generalized intent to distribute the controlled substance in the future. ***
>
> "Some additional evidence that the person made an effort to engage in the act of transferring is required."

371 Or at 359-60 (emphasis in original). The court did not specify the exact sort of additional evidence that might be sufficient, noting that "[t]ransfers of controlled substances take varying forms, *** and what is necessary for an 'attempted transfer' will depend on the circumstances." *Id.* at 360.

While defendant and Mahoney had a dealer quantity of methamphetamine, baggies, and a scale, there was no evidence of any effort on their part to actually transfer the methamphetamine to another person. The state argues that because defendant and Mahoney were transporting the drugs by car, a reasonable factfinder could infer that they were attempting to transfer the drugs to a buyer. But the fact that they were in a moving vehicle with a controlled substance and packaging materials does not, without more, support the inference that they were en route to make a sale. *See State v. Wesley*, 326 Or App 500, 509, 533 P3d 786, *rev den*, 371 Or 511 (2023) (evidence was sufficient to support a conviction for the inchoate crime of attempted delivery, but not the completed crime of delivery, where defendant was

stopped in his truck and found to have methamphetamine, plastic baggies, a digital scale, plastic gloves, and $1,000 in cash). Mahoney testified that she was giving defendant a ride to his vehicle, and the state offered no evidence to contradict that testimony. The evidence is plainly insufficient to establish an attempted transfer.

The jury instruction was also plainly incorrect under *Hubbell II*. At trial, the jury was instructed that delivery is "[t]he actual, constructive, or attempted transfer *** of a controlled substance" and that "[p]ossession with intent to deliver constitutes delivery even when no actual transfer is shown." The state argues that the instruction is not obviously erroneous when read in the context of all the instructions because the trial court also instructed the jury that "[o]nly [the] transferor, not [the] recipient, commits the crime of delivery." On that basis, the state argues that the jury likely understood that it had to find that defendant actually tried to transfer the methamphetamine to a recipient, as *Hubbell II* requires. We disagree.

Defense counsel specifically argued that "if he's the buyer and she's the dealer, then he can't be guilty of delivery, it says [so] right in the instruction," and the prosecutor argued that "[p]ossession with the intent to deliver constitutes delivery, even if no actual transfer is shown. That means my officers don't need to catch him handing someone else methamphetamine." The transferor-recipient instruction was, thus, consistent with defendant's theory of the case and at odds with the court's instruction that actual transfer need not be shown. Yet the prosecutor did nothing to clarify the state's burden of proof on the question of transfer. Indeed, the arguments likely added to the confusion inherent in the instructions, creating a misimpression of the law. To be sure, the jury may well have understood that it had to find that defendant was more than a drug user and was generally engaged in drug dealing. Such a finding on its own, however, is insufficient under *Hubbell II*. The instructions do not make it clear that to find defendant guilty of delivery, the jury must find that defendant went to some effort to cause the methamphetamine to change hands. Accordingly, we conclude that the jury instruction was plainly erroneous.

## VII.   REMEDY ON REMAND

Because we conclude that reversal is required on the delivery count, we turn our attention to the proper remedy, a matter about which the parties do not agree. Our dispositional options on the reversed delivery count are rooted in Article VII (Amended), section 3, of the Oregon Constitution. In determining whether to remand for entry of a judgment of conviction for attempted delivery of methamphetamine, we first assess the sufficiency of the evidence to support such a conviction and, if it does, whether we should direct that conviction be entered. *See*, *e.g.*, *Hubbell II*, 371 Or at 361 (2023) (using same approach to determine the appropriate remedy on remand following reversal of delivery count); *see also State v. Carr*, 319 Or App 684, 692-93, 511 P3d 432 (2022), *rev den*, 371 Or 771 (2023) (using same approach to determine the appropriate remedy on remand in a post-*Hubbell I* case).

We thus turn to whether the evidence is sufficient to support a conviction for the crime of attempted delivery. A person commits the inchoate crime of attempt when they engage in intentional conduct that constitutes a substantial step toward the commission of a crime. ORS 161.405. "A substantial step occurs when a person's conduct (1) advances the criminal purpose charged and (2) provides verification of the existence of that purpose." *Hubbell II*, 371 Or at 362.

In *Hubbell II*, the Supreme Court explained that the defendant had taken "perhaps the most consequential step necessary to traffic illegal drugs, which is to acquire them." *Id.* Because the defendant had also engaged in "conduct that advanced and verified the existence of a criminal purpose—the fentanyl had been prepackaged for sale," the evidence was "sufficient to convict defendant of the inchoate crime of attempt." *Id.* The court remanded for entry of a judgment of conviction for attempted delivery, noting that the trial court necessarily convicted defendant of the lesser-included inchoate crime. *Id.* at 362-63.

Here, defendant possessed a large quantity of methamphetamine packaged in multiple baggies along with additional distribution packaging. He and Mahoney were

together immediately prior to the stop and, according to defendant, the methamphetamine was "just cut." That evidence, viewed in accordance with our standard of review, supports that (1) defendant had taken the most consequential step necessary to deliver methamphetamine—he had acquired, and was in possession of, a dealer quantity of the drug, and (2) he had participated in packaging it into multiple bags for sale. Under *Hubbell II*, that conduct goes beyond mere preparation "and constitutes a substantial step toward committing the crime of delivery" and is, therefore, "sufficient to convict defendant of the inchoate crime of attempt." *Hubbell II*, 371 Or at 362. Additionally, and as previously noted, the jury was instructed that delivery is the "actual, constructive, or attempted transfer" of a controlled substance. It was further instructed that possession with the intent to deliver constitutes delivery. There was no evidence presented of an actual or constructive transfer. The jury necessarily convicted defendant on an attempted transfer theory. That conviction for an attempted transfer of drugs and the evidence that defendant took a substantial step toward delivery of the drugs supports entry of a conviction on remand for the inchoate crime of attempt.

The dissent incorrectly concludes that our disposition violates defendant's right to a jury trial. 330 Or App at 442 (Pagán, J., dissenting). It does not. As we explained in *Wesley*, where we similarly reviewed a verdict decided by a jury, we may "remand for entry of a judgment of conviction for a lesser-included crime such as attempt when the jury necessarily found all the elements of that offense." 326 Or App at 507. Indeed, Article VII (Amended), section 3, of the Oregon Constitution *requires* us to direct entry of the judgment that "should have been entered in the court below" when we can determine what that judgment should have been. And even if the dissent is correct in describing our Article VII (Amended), section 3 authority as "unique," 330 Or App at 440 (Pagán, J., dissenting), we are bound to adhere to it, along with all other constitutional provisions that, together, define the keystone requirements of a fair trial. Defendant was on notice that by exercising his right to have a jury trial, the jury could find him guilty of the crimes with which he was charged and all lesser-included crimes

including, specifically, any "attempt to commit" the crimes with which he "[wa]s charged[.]" ORS 136.465. Our disposition should not come as a surprise. Indeed, it is the remedy to which defendant is entitled in light of the plain legal error that occurred and the record on which the jury reached its verdict.

Conviction on Count 1 reversed and remanded for entry of judgment of conviction for attempted delivery of methamphetamine; remanded for resentencing; otherwise affirmed.

PAGÁN, J., concurring in part, dissenting in part.

I agree with the majority as to its rejection of defendant's first and third assignments of error and its disposition regarding defendant's convictions for unlawful manufacture of methamphetamine (Count 2) and unlawful possession of methamphetamine (Count 3); therefore, I concur in that respect. I also agree with the majority that our decision in *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *aff'd*, 371 Or 340, 537 P3d 503 (*Hubbell I*), and the Supreme Court's decision in *State v. Hubbell*, 371 Or 340, 537 P3d 503 (2023) (*Hubbell II*), require reversal of the delivery conviction (Count 1). However, I disagree regarding the disposition on that count.

In my view, two competing constitutional provisions are implicated when considering remanding for entry of judgment of a lesser-included offense when that charge was not argued or presented in the trial court: the right to a jury trial, and the discretionary authority of the appellate courts to enter a judgment below for what the court considers to be the appropriate disposition. One of those provisions—the right to a jury trial—establishes what many consider to be a tent-pole principle of our entire jurisprudential system. The other is a unique authority granted to Oregon courts that exists almost nowhere else in the United States. In that context, I believe our obligation is to protect the fundamental right rather than exercise the discretionary authority. Instead of remanding for entry of a judgment of conviction for attempted delivery of methamphetamine, I believe we are required to reverse and remand that count for retrial.

In *State v. Wesley*, 326 Or App 500, 519-24, 533 P3d 786, *rev den*, 371 Or 511 (2023) (Pagán, J., concurring in part and dissenting in part), I dissented from the majority's disposition of a similar count for the same reason I do today. Since then, the Supreme Court decided *Hubbell II*, but the Supreme Court considered the appropriate disposition in the context of a bench trial, not a jury trial. *Hubbell II*, 371 Or at 342. Accordingly, it did not address what I perceive to be a fundamental tension between Article VII (Amended), section 3, of the Oregon Constitution and a defendant's right to trial by jury. The state constitution grants us the authority to direct that a different conviction be entered if we "can determine what judgment should have been entered in the court below." Or Const, Art VII (Amended), § 3. But, at the same time, a defendant in a criminal prosecution has "the right to public trial by an impartial jury ***." Or Const, Art 1, § 11.

*Hubbell II* concluded that the evidence in that case was sufficient to convict the defendant of the inchoate crime of attempt because the record contained the trial court's explanation of the findings that led it to conclude that the defendant had taken a substantial step toward delivery of a controlled substance. The Supreme Court stated that "the trial court in effect *did* convict [the] defendant of attempted delivery, so it is unnecessary to remand for the trial court to consider in the first instance whether to convict [the] defendant of that crime." *Hubbell II*, 371 Or at 362-63 (emphasis in original).

Here, by contrast, *a jury* convicted defendant of unlawful delivery of methamphetamine. As the majority opinion explains, the evidence presented was plainly insufficient to establish an attempted transfer, and the jury instruction was plainly incorrect under *Hubbell II*. 330 Or App at 435-37. However, regarding the disposition, I disagree with the majority's implicit assumption that the jury necessarily found all of the elements of the lesser-included offense of attempted delivery of methamphetamine. The jury was instructed that a delivery can include an "attempted transfer," but the jury was not instructed regarding the

elements of the crime of attempt. As the Supreme Court explained,

> "The crime of attempt has two elements: (1) intentional conduct that (2) constitutes a substantial step toward the commission of the crime. Conduct is intentional when a person acts with a conscious objective to cause the result or to engage in the conduct so described. A substantial step occurs when a person's conduct (1) advances the criminal purpose charged and (2) provides verification of the existence of that purpose. We have distinguished a substantial step, which is a predicate for attempt liability, from mere preparation, which is not sufficient."

*Hubbell II*, 371 Or at 361-62 (citations and internal quotation marks omitted).

The jury was not instructed regarding intentional conduct or conduct that constitutes a substantial step toward delivery of a controlled substance. Nor was the jury instructed regarding attempted delivery of methamphetamine as a lesser-included charge. In *Hubbell II*, the Supreme Court noted that the trial court expressly found that the "defendant's possession of multiple prepackaged bags of fentanyl constituted a substantial step." *Id.* at 363. But here, there is nothing in the record to suggest that the jury considered and concluded that defendant's constructive possession of approximately 100 grams of methamphetamine, some baggies, a scale, and some needles, was intentional conduct that constituted a substantial step toward delivery of methamphetamine.

Most importantly, neither the defendant nor the state had the opportunity to argue the "substantial step" instruction or adapt their trial strategies to address such an instruction. That, in my view, deprives defendant of the right to a jury trial on the charge for which he is now convicted. We should reverse and remand for a new trial on whether defendant attempted to deliver methamphetamine. Therefore, I respectfully dissent regarding the majority's disposition of Count 1, but otherwise concur.