398 March 6, 2024 No. 159

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KATIE TAYLOR SLAY,
*Defendant-Appellant.*

Polk County Circuit Court
21CR16924; A178236

Rafael A. Caso, Judge.

Submitted December 22, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Katie Slay filed the supplemental brief *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals a judgment of conviction for conspiracy to commit second-degree murder stemming from defendant's request that her boyfriend and another friend kill her ex-husband, K. Defendant assigns error to the trial court's decisions to (1) admit two photographs of her boyfriend and coconspirator; (2) decline to strike the prosecutor's statements against defendant's and her boyfriend's credibility; and (3) decline to declare a mistrial based on those statements. Defendant also raises two *pro se* supplemental assignments of error, which we reject. We affirm.

The pertinent facts are undisputed. Defendant and K were briefly married. They divorced before their only child, V, was born. K obtained legal custody of V, but each parent continued to split time with the child. When K would pick up V from defendant's home, the atmosphere was extremely contentious. Burr (defendant's boyfriend) and defendant frequently engaged in yelling matches with K and K's mother. On one occasion, three men surrounded K with knives when he attempted to pick up V. The relationship between defendant and K continued to devolve over time.

As the relationship deteriorated, defendant sent messages to a friend, Gomez, asking him to help murder K because K was "trying to take [her] son away from [her] forever." Defendant later contacted McClure, and he contacted Burr, defendant's eventual boyfriend, asking them to murder K. She suggested multiple ways to have K killed—"make it look like a car accident, shooting him, break into this house."

On February 27, 2021, Burr and McClure followed K as he pulled into a grocery store parking lot. There, Burr shot K multiple times with McClure acting as the getaway driver. K survived the shooting.

The state charged defendant with conspiracy to commit second-degree murder and solicitation to commit second-degree murder. After a bench trial, defendant was found guilty of both charges.

In defendant's first assignment of error, she contends that the trial court erred by admitting Exhibits 68

and 69—two photographs of Burr with an angry expression during one of the contentious interactions with K and K's mother—because the probative value of those photographs was substantially outweighed by the danger of unfair prejudice. OEC 403.[1] "We review a trial court's decision to admit evidence over an OEC 403 objection for abuse of discretion." *State v. Davis*, 291 Or App 146, 159, 419 P3d 730, *rev den*, 363 Or 481 (2018).

When determining whether the trial court abused its discretion, we follow the analytical framework set forth in *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987). First, "the trial judge should assess the proponent's need for the *** evidence." *Id.* Second, the trial judge must determine "how prejudicial the evidence is." *Id.* Third, the trial judge must consider the "judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice." *Id.* Finally, the judge must make the ruling whether "to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence." *Id.*

At trial, defendant objected to the two photographs as irrelevant and overly prejudicial under OEC 401 and 403. The state responded that the photographs were "relevant to show the argumentative nature [and] combativeness of the exchanges." The trial judge ruled that the two photographs "could" contain "relevant information" for the state to establish its burden of proof, and "the probative value is not substantially outweighed by any undue prejudice."

On appeal, defendant renews her argument: the photographs were unfairly prejudicial because of the prejudicial effect of showing Burr as "irrationally aggressive and violent against [K]," and minimal probative value, given that witness testimony had already established the contentious relationship among defendant, Burr, K, and K's mother. We disagree. First, the photographs were relevant because each party disputed who was confrontational during the interactions. *See State v. Boauod*, 302 Or App 67, 74, 459 P3d 903 (2020) (explaining that video evidence was relevant, in

---

[1] OEC 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

part, because it "shows defendant's demeanor \*\*\* and, at times, facial expressions when confronted with the allegations"). However, even relevant evidence can be excluded as "unfairly prejudicial when it has an undue tendency to suggest a decision on an improper basis, \*\*\* and when the preferences of the trier of fact are affected by reasons essentially unrelated to the persuasive power of the evidence to establish fact of consequence." *Id.* (internal quotation marks omitted). Here, Burr had already pleaded guilty to shooting K, and he testified that he attempted to kill K for money. Thus, depicting Burr as "aggressive and violent against [K]" in light of those facts diminishes any prejudicial effect. Accordingly, the trial court did not abuse its discretion in admitting the two photographs.

In her second assignment of error, defendant contends that, during closing argument, the prosecutor improperly vouched against defendant's and Burr's credibility. Defendant acknowledges that those arguments are unpreserved and requests that we review the prosecutor's conduct for plain error. "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). A defendant seeking "an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived defendant of a fair trial." *State v. Chitwood*, 370 Or 305, 313-14, 518 P3d 903 (2022). A defendant must demonstrate that "if the defendant had made a motion for mistrial, the trial court would have erred, as a matter of law, in denying it." *Id.* at 312.

We review whether a prosecutor's statement constitutes impermissible vouching for legal error. *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019). Vouching occurs when "prosecutors giv[e] their own personal opinions on the credibility of" a witness. *State v. Kiesau*, 314 Or App 327, 328, 496 P3d 1151 (2021). Prosecutors, like all attorneys, have "a large degree of freedom to comment on the evidence submitted and urge" the factfinder to "draw any and all legitimate inferences from that evidence." *Cler v. Providence*

*Health System-Oregon*, 349 Or 481, 487, 245 P3d 642 (2010) (internal quotations omitted). "[A]s advocates for the state's cause," prosecutors "have wide latitude to make *arguments* from the evidence[.]" *Sperou,* 365 Or at 130 (emphasis in original).

In closing, the prosecutor argued the following in regard to defendant's credibility:

> "Frankly, without—with regards to the most damning of statements against her, [defendant] has had an answer or excuse for everything. She has said that she was just kidding about that, or she was buying marijuana for her sister, or she had had a bad day, or she'd been drinking, or it was [K's] mom's fault, or the reason she didn't report Mr. Burr's threats against [K] was that she was scared. Frankly, the list just goes on and on. And Your Honor, she simply cannot be believed."

After providing some examples of K's statements that were questionable, the prosecutor argued the following in regard to Burr's credibility:

> "And today we hear for the first time is Mr. Burr testifying that there was a plot to hire him for $1400 to kill [K]. I submit to you you should give no credibility to that. At no point, until today, at any other part of any other investigation, has this plot to hire for money to kill [K] come out in any investigation, in any testimony you heard from. But it does reveal some interesting details, at least which are that [defendant] was apparently—gave money to Mr. Burr to help purchase the fire arm ultimately was used in the shooting, the revolver, of [K]."

Defendant contends that that closing argument impermissibly vouched against defendant's credibility because the prosecutor "relied on a character inference in arguing that because defendant made apparently untrue statements in her personal life, she had a propensity to lie in all situations." Defendant further argues that the prosecutor impermissibly vouched against Burr's credibility by "express[ing] [his] personal outrage at lack of credibility of defendant and Burr's testimony[.]"

It is proper—indeed, required—for an attorney to be able to comment on the evidence presented. Attorneys play

an important role in synthesizing evidence and advocating for their client based on that evidence. Advocacy, whether it be in the criminal or civil context, would be nearly impossible if attorneys were not able to comment on a witness's credibility, provided that their argument is grounded in the evidence in the record.

In this case, the prosecutor's argument that called defendant's credibility into question was so grounded. During closing, the prosecutor pointed out that, although defendant testified that she still loved K and did not love Burr, evidence undermined that testimony. Specifically, while in custody, she wrote to Burr professing her love for him and asking him to marry her. Similarly, defendant testified that, "personally I have said I wish [K] would go away. He has his biological father that he has never met and so I was wishing that he would meet him and just go away." However, evidence showed that when Gomez messaged defendant asking why she wanted K dead, she replied, "because [K] is trying to take my son away from me forever," never mentioning anything about K's biological father. The prosecutor pointed to those types of inconsistencies, as well as to statements that did not make logical sense, to argue why the factfinder should doubt defendant's credibility. That is exactly what a prosecutor is supposed to do. *Cf. State v. Montgomery*, 327 Or App 655, 631, 536 P3d 627 (2023), *rev den,* 371 Or 825 (2024) (the prosecutor's "repeated statements that defendant had lied" was improper because the prosecutor did not point "to evidence in the record to cast doubt on defendant's testimony"); *see also State v. Purrier*, 265 Or App 618, 620, 336 P3d 574 (2014) (explaining that "the state permissibly may attempt to persuade the [factfinder] that it should believe one version of events and not another").

Similarly, the prosecutor's argument did not interject his personal opinion of Burr's credibility. During closing, the prosecutor commented, "I submit to you you should give no credibility to that." Following that contested statement, the prosecutor went on to explain why Burr's testimony should be given little weight. Burr testified that he had received $1,400 from McClure to kill K—an assertion that was not substantiated by any testimony from McClure,

detectives, or any other facts on the record. Thus, the prosecutor did not offer a personal opinion of Burr; instead, he permissibly argued for why Burr's credibility should be questioned given the evidentiary record. *See Davis v. Cain*, 304 Or App 356, 365, 467 P3d 816 (2020) (the prosecutor's arguments become impermissible when they are "in the nature of 'take my word for it,' [and] not 'let me show you'"). Accordingly, the trial court did not plainly err in not striking the prosecutor's statements relating to defendant's and Burr's credibility.

In defendant's third assignment of error, she contends that the court erred by not declaring a mistrial based on the prosecutor's vouching statements. Our conclusion that the prosecutor's argument did not constitute impermissible vouching resolves this assignment of error.

Defendant submits two additional *pro se* assignments of error. First, defendant argues that "allowing" the detective's "statements to determine the verdict warrants a new trial or reversal of charges." Second, she argues that the trial judge should have struck McClure's testimony because it was inconsistent. Both *pro se* assignments of error are not preserved, and after reviewing the record, the errors, if any, are not plain.

Affirmed.