No. 660 September 18, 2024 103

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRISTAL GARCIA MARTINEZ,
*Defendant-Appellant.*

Marion County Circuit Court
22CR12936, 21CR02819; A179436 (Control), A179437

Thomas M. Hart, Judge.

Submitted July 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals a judgment convicting her of three crimes: unauthorized use of a vehicle, ORS 164.135; second-degree criminal mischief, ORS 164.354; and possession of a burglary tool, ORS 164.235. In a single assignment of error, she seeks the reversal of those convictions, arguing that the trial court plainly erred when it "allowed the state to argue in closing, 'We've never seen Patrick, never heard from Patrick.'" Defendant argues that the statement was improper and that it deprived her of a fair trial. We conclude that defendant was not deprived of a fair trial, and therefore, we affirm.[1]

Defendant was seen sitting in a car that was not hers, along with her dog, with the engine running and the headlights on. When approached by a law enforcement officer, she told him that her friend Patrick had given her permission to be in the car. The officer stayed at the scene for about two hours, but Patrick did not appear. Defendant told the officer that she started the car in order to stay warm. She used a screwdriver to do so. The officer observed damage to the car, including exposed wiring under the steering column. Defendant had a screwdriver, a utility knife, and multiple sets of keys, including shaved keys, in her pocket.

She was charged with the crimes already mentioned, and the case was tried to a jury. Defendant testified that her friend Patrick told her to wait in the car and that she thought Patrick had the owner's permission to be in the car. She was in the car for about 20 minutes before the law enforcement officer contacted her. Defendant indicated that Patrick's RV was parked in the same parking lot, but that Patrick would not have returned to the scene "if he saw cops."

The prosecutor stated the following during his closing argument:

"So in—in my line of work and what I do, you always hear about the—the shaggy-haired stranger, bushy-haired individual, the—the one-armed individual that did it that

---

[1] The jury trial occurred in Case No. 22CR12936. That case was consolidated with Case No. 21CR02819, in which defendant pleaded guilty to second-degree robbery and attempted second-degree robbery. Defendant does not assign error to any order or the judgment in Case No. 21CR02819.

nobody can seem to find, Patrick. So we're kind of pointing everything to—to Patrick.

"This really, ladies and gentlemen, is a kind of a case—a little bit of it is about credibility. And that is for you, as jurors, to—to weigh that and make those decisions. So that's just kind of how this started.

"* * * * *

"* * * Then she meets up with Patrick. He's got no last name. Don't know his phone number. But before she leaves, she happens to grab a coat that—what—has a screwdriver in it.

"It's got keys, lots of keys that the officer testified to. It has shaved keys and a pair of pliers. * * *

"You know, the defendant, when she was first contacted, as the officer said, she wouldn't give her name. It took a while before she would eventually give the officer her name. Why is that? There's no last name for Patrick. Patrick never comes back.

"*We've never seen Patrick, never heard from Patrick.* Officers never heard from him. He didn't call up. Nothing."

(Emphasis added.) The prosecutor went on to argue that Patrick was "a red herring" and that the "Patrick story doesn't make sense[.]" The jury found defendant guilty of the charged crimes.

Defendant did not object to the statement that she claims rendered her trial unfair, and therefore, she did not preserve the argument she now makes on appeal. *State v. Tacia*, 330 Or App 425, 428, 543 P3d 713 (2024). Despite that deficiency, she asks us to review for plain error and to reverse her convictions. An error is 'plain' when it is an error (1) of law, (2) obvious and not in dispute, and (3) apparent on the record without our having to choose among competing inferences. *Id.* We cannot say that the statement in question qualifies as such.

To begin, we agree that the prosecutor's statement was improper. There is a difference between (1) explaining to the jury the state's view of the evidence and explaining why the evidence should lead the jurors to conclude that the state has proved its case against defendant, and

(2) discussing the evidence in a way that leads the jurors to believe that defendant bears the burden to disprove the state's case. The first type of explanation is proper; the second is not. It is permissible to rely on the evidence to explain why the jury should doubt defendant's credibility. *See State v. Slay*, 331 Or App 398, 403-04, 545 P3d 768, *rev den*, 372 Or 560 (2024) (explaining that pointing to inconsistencies in the evidence, "as well as to statements that d[o] not make logical sense, to argue why the factfinder should doubt defendant's credibility \*\*\* is exactly what a prosecutor is supposed to do"). "However, the prosecutor must not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019) (internal quotation marks omitted). For that reason, in *State v. Mayo*, 303 Or App 525, 537, 465 P3d 267 (2020), we explained that the "state cannot comment on a defendant's failure to adduce evidence to prove that the defendant did not have the requisite mental state necessary to establish criminal liability, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence to prove his or her innocence."

Here, the trial court instructed the jury that to establish unauthorized use of a vehicle, the state had the burden to prove beyond a reasonable doubt that defendant "knowingly exercised control over" the vehicle, and that she "knowingly did not have the consent of the owner." Defendant argues that the prosecutor's comment about Patrick impermissibly shifted the state's burden of proof to her, because it implied that she had the burden to present evidence at trial to support her defense—that is, either to call Patrick as a trial witness or produce evidence explaining why she did not—and that she failed to meet that burden. The state responds that, in context, the jury would have understood the prosecutor to argue that contrary to defendant's sworn testimony, "Patrick did not exist." Such an argument, according to the state, is permissible because it goes to defendant's credibility and implores the jury to believe the state's version of events, rather than defendant's.

Contrary to the state's argument, we conclude that the prosecutor's statement—"We've never seen Patrick, never heard from Patrick"—created the realistic possibility of confusing the jury as to the burden of proof.

Nevertheless, it is well-settled that "to establish legal error, a defendant who seeks review of an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived the defendant of a fair trial." *State v. Chitwood*, 370 Or 305, 313-14, 518 P3d 903 (2022). As we explained in *State v Durant*, 327 Or App 363, 365, 535 P3d 808 (2023), "prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." (Emphasis in original.) Here, we cannot say that the statement was so prejudicial as to have denied defendant a fair trial. *Chitwood*, 370 Or at 312. If defendant had objected to the prosecutor's statement, then the trial court could easily have stricken it and instructed the jury to disregard it. The court might also have reminded the jurors that while the arguments of counsel are intended to be helpful to them, they are not evidence, and it might have referred the jurors back to the court's instructions concerning matters of proof and the state's burden. Reasonable jurors might have understood the prosecutor's statement in different ways, one of which would have been improper. But the trial court's failure to grant a mistrial was not plain error because any prejudice caused by the improper statement was curable.

Affirmed.